WILLIAM C. WICKHAM v. CHICAGO, ST. PAUL, MINNE-
APOLIS & OMAHA RAILWAY COMPANY.[1]

February 4, 1910.

Nos. 16,366—(205).

**Safe Place for Servant's Work — Verdict Sustained by Evidence.**
    The evidence was sufficient to support a finding of the jury that appellant
    was negligent in not providing a safe place for respondent's intestate to work
    in, and in ordering him, an inexperienced common laborer, to repair the
    floors of its repair shop without informing him of the danger of working un-
    der cars which had been propped up for repairs, and without instructing the
    car repairers to look out for him.

**Assumption of Risk.**
    The evidence is not conclusive that respondent's intestate assumed the risk
    of going under a propped-up car for the purpose of fixing the floor without
    investigating the condition, or inquiring from the car repairers as to the
    safety of so doing.

**Charge to Jury.**
    The court did not err in giving certain instructions to the jury.

Action in the district court for Ramsey county by the administra-
tor of the estate of Thomas Wickham, deceased, to recover $5,000
for the death of his intestate. The complaint, in addition to the
averments mentioned in the second paragraph of the opinion, set out
the sections of the Wisconsin statute relating to death by wrongful act
and to action therefor. The answer admitted that section 4255 of the
Wisconsin statutes (1898) was in full force at the time of decedent's
death, but alleged that the laws of Wisconsin did not on April 22,
1907, impose a duty on defendant of maintaining a reasonably safe
place for the deceased to work in and that, owing to the changes con-
tinually going on in its shop, dangers arose against which no forecast

[1]Reported in 124 N. W. 639, 994.

[Note]  For master's duty as to places and appliances furnished to a servant,
see case note in 6 L.R.A.(N.S.) 602.

could have been provided or warning been given; that deceased was a fellow servant of the car repairers and assumed the risks of his employment. The case was tried before Orr, J., and a jury which returned a verdict in favor of plaintiff for $4,500. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*James B. Sheean,* for appellant

*C. D. & R. D. O'Brien* and *N. O. Varnum,* for respondent.

LEWIS, J.

Respondent's intestate, Thomas Wickham, was killed on the twenty-second day of April, 1907, by the falling of the center sills from the framework of a certain freight car while undergoing repairs in appellant's shop. Appellant's repair shop at Hudson, Wisconsin, was extensive, and contained thirteen railroad tracks, on which damaged freight cars, cabooses, hand cars, and car trucks were placed for repairs, and about ninety men were engaged in the work. For about a year before his death Wickham had been employed as a common laborer, a member of a work or cleaning-up gang, whose duty it was to sweep, carry away the débris from dismantled cars, and do odd jobs both outside and in the shop. In the work of repairs, jacks and other appliances used in raising the cars often damaged and broke holes in the floor between the rails, and about four days prior to the accident the general foreman told Wickham "to get some plank and patch up the floors through the shop where they were bad." Wickham proceeded as directed, and on the morning of April 22 stopped at track No. 5 to do some work on the floor; but the car carpenter at work on a car on that track told him he would rather not have him fix that part of the floor then, as he was engaged in putting some sills on the car, and Wickham went on to track No. 7, and under the south end of a large 34-foot Lackawanna car, which was propped up on tripods at each corner. Two carpenters, Smith and Hanson, were at that time engaged in removing the north end cross-sill. These cross-sills supported the center sills, and upon removing the north end sill the center sills fell and pinned Wickham to the floor, causing his death.

1. The first point made by appellant is that the evidence does not sustain the specific charge of the complaint. The act of negligence relied on is set out in the complaint as follows: "* * * That said defendant, though well knowing the circumstances, and having produced said situation by its orders, failed and neglected to inform either of said parties, the said Wickham, or said men engaged in repairing said car, of the presence of each other, their several situations, or the consequences that would result to said Wickham of proceeding with the removal of said sills; and that by reason of the aforesaid facts and circumstances the place beneath said car, where said Wickham was required and directed by defendant to work in repairing said floor, became unreasonably dangerous, and was not reasonably safe * * * ." This was followed by an allegation that, while Wickham was there the car repairers loosened the sills and permitted the same to drop upon the floor, a distance of about four feet, and upon Wickham, inflicting the injuries which caused his death. The complaint also states that appellant directed Wickham to repair the floor under the particular car above described, and negligently directed the carpenters to remove the sills, without informing them that Wickham was at work thereunder, and without informing him of the danger. There was no evidence of specific directions to Wickham to work under this particular car. His directions were general, to repair the floor wherever needed, and if, under such general orders, he was justified in going under the car specified, then there was not a failure of proof, and the specific allegation referred to was immaterial.

Had Wickham been an experienced floor repairer and acting under such general instructions, it would be difficult to avoid the conclusion that in carrying on his work he assumed the risk of going under cars in process of repair. But he was a most ordinary common laborer, and his experience in the work of sweeping, carrying away débris, and other rough work was not calculated to give him knowledge of the dangers connected with falling sills. So far as the record shows he was given no warning of any danger whatever, and was not requested to make any inquiry from the men at work on the cars. His instructions were such that a person of his intelligence and lack

of training might naturally assume that it was safe to work on the floor under a car propped up on tripods.   Under such circumstances the master cannot claim to have discharged his duty in furnishing a reasonably safe place, unless precautions were taken to have the repairers keep a lookout for him, and warn him.   The giving of such general instructions to Wickham, and the failure to give specific instructions to the repairers, were facts sufficient to sustain a finding that appellant neglected its duty to furnish a reasonably safe place for the floor repairer to work in.

2.  Upon first impression it would seem that a man of ordinary prudence would have made inquiry before going under the car.   We must assume that Wickham could have seen the carpenters standing on the floor and working at the north end of the car.   The space under it was free from obstructions, and it was light.   The repairers testified that he made no inquiry, and that they had no knowledge of his presence.   Consequently he must have failed to look, or, if he did, and saw them, he was not impressed with the necessity of inquiring as to the safety of the conditions present.   The car was propped up about four feet from the floor by a tripod under each corner.   The trucks, rods, and braces had all been removed.   To appearances, there was nothing to indicate that the center sills were not properly fastened from above.   They fell because they were not nailed to the floor of the car, and this was an unusual thing, not even anticipated by the carpenters.   Why, then, should this common laborer be required to anticipate that there was anything unusual in the condition, and that the sills were liable to fall upon the removal of the truss rods and cross-sills?   We have come to the conclusion that it was a question for the jury whether under the circumstances Wickham assumed the risk of proceeding in the manner in which he did.

3.  The court stated to the jury, in the course of the instructions, that the work of taking apart and repairing cars was carried on by sundry skilled mechanics and workmen in the employ of appellant, and that all of the work was conducted under the immediate direction of appellant, its servants and employees, and, later on, that if appellant or his servants knew, or in the exercise of ordinary care

under the circumstances ought to have known, that Wickham was in a dangerous and unsafe place, the notice should have been given him.

This language was assigned as error, on the ground that it placed the duty on every servant in the shop to exercise ordinary car in keeping a lookout for Wickham, and held appellant responsible for the failure of any of those servants to notify Wickham of his danger. Standing alone, this statement might be misleading; but the undisputed evidence is that Wickham was under the general direction of the foreman of the shop, and the court no doubt had in mind those servants who were charged with the duty of directing Wickham and the other employees as to their duties. It is evident that the court did not misunderstand the propositions of law involved, and did not intend to convey any wrong impression; for later on the jury were specifically told that, if satisfied from the evidence that the death of Wickham was caused solely or proximately as the result of the negligence of his fellow servants, there could be no recovery.

In instructing the jury the court used the term "proximate cause" without defining its meaning. The context clearly indicates that the jury understood the propositions of law then under consideration, and they could not have been misled by this omission. Besides, if counsel was apprehensive that the jury were not fully informed as to the meaning of the term, the attention of the court should then have been called to the matter.

The other assignments of error do not require any special mention, and the order appealed from is affirmed.

O'BRIEN, J., took no part.

On February 28, 1910, the following opinion was filed:

PER CURIAM.

The petition for reargument is based in part on the omission of the court to notice in the opinion the assignment of error directed to the refusal of the trial court to instruct the jury to designate which one of appellant's servants caused the death of Wickham. Section 4179, R. L. 1905.

As stated in the opinion, this action is based on the negligent act of the master, acting through its foreman as vice principal, in directing Wickham to repair the floors without furnishing him a safe place to work in.  Obviously no act of negligence on the part of a fellow servant or coemployee was involved, and the statute has no application.

Petition denied.