# MICHAEL DOUGHERTY v. MINNEAPOLIS STEEL & MA-CHINERY COMPANY.[1]

April 29, 1910.

Nos. 16,545—(108).

**Negligence of Master — Proximate Cause — Evidence.**

The evidence sustains the verdict of the jury that the proximate cause of the accident was the failure of the master to furnish the requisite number of men to move a scaffold used during the erection of a building, and in failing to notify respondent of the dangers attending the moving of the scaffold by taking it apart.

**Contributory Negligence — Assumption of Risk — Evidence.**

The evidence was sufficient to sustain the jury in finding that respondent was not guilty of contributory negligence and did not assume the risks attending the work in which he was engaged.

Action in the district court for Hennepin county to recover $25,000 for personal injuries. The answer admitted the injury but denied negligence on the part of defendant. The facts are stated in the opinion. The case was tried before Simpson, J., and a jury which returned a verdict in favor of plaintiff for $3,292.50. From the judgment entered pursuant to the verdict, defendant appealed. Affirmed.

*Bracelin & Cronin* and *John D. O'Brien,* for appellant.
*M. P. Brewer,* for respondent.

LEWIS, J.

Respondent was employed by appellant as a common laborer in and about the construction of a building known as a balloon ware-house. After about three weeks he was put to work at "bucking up"

[1]Reported in 126 N. W. 136.

[Note] Duty of master to employ an adequate number of servants, see note to Smith v. St. Louis & S. F. R. Co. (Mo.) 48 L.R.A. 392. Master's duty to warn servant, see note to James v. Rapides Lumber Co. (La.) 44 L.R.A. 33.

110 M.—32.

on the skeleton of the building, which he did for a few weeks, and a day or two before the accident was assigned to work at bucking up with a roofing gang, consisting of three men. On the day of the accident they were engaged in riveting certain iron plates, about two feet wide, on the roof of the building. One of the men, known as the "sheeter," remained on top; the bucker up stood on the scaffolding underneath, and it was his duty to punch holes through the overlapping sheets above and hold a dolly bar against the head of the rivet while the man above did the riveting; and the third man was employed to assist the riveter. It became necessary to move the scaffold, and respondent, with the assistance of one man, the third man having been called away, attempted to do so, and during the process one of the planks fell, which caused him to be thrown to the ground and injured.

This action is based on the claim that appellant was negligent in its duty in failing to furnish the requisite number of men in moving the scaffold, and in failing to warn respondent of the dangers attending it. This scaffold was underneath the roof of a lean-to and conformed to its slope. It consisted of four pine planks, ten feet long, ten or twelve inches wide, and two inches thick. Two of the planks were placed end to end, slightly overlapping where they met, and held together with a bolt. The other two planks were similarly placed by the side of the first two and fastened with a bolt; but the two sets of planks were not fastened together in any way. At the upper end, and in the center, the planks rested on two iron pipes securely placed there for the purpose of supporting them, and at the lower end they rested upon a girder. To keep the scaffold from slipping from its supports, long iron bolts were projected through the ends of the planks and rested against the iron pipes and girder. The laying of each additional width of sheet roofing necessitated the moving of the scaffold sideways for a distance of two feet, and within each panel the scaffold was moved in this way seven or eight times, and respondent had assisted in moving it about twenty times.

According to respondent's testimony the method followed in moving the scaffold was for O'Neil, the sheeter, to stand on a beam in the structure at the upper end; Gather, the helper, on another beam

at the lower end, and respondent, the bucker up, on the middle pipe, steadying himself with his hands on some part of the structure above, and all simultaneously pushing the scaffold to the desired place on the pipes. At the time of the accident the helper had been called to do other work, and O'Neil and respondent, under his direction, proceeded to move it without the assistance of a third man, and while respondent was in the act of adjusting a bolt in the bottom boards, which had been taken apart, the lower board fell, causing the other end to fly up and knock respondent to the ground, a distance of twenty-five feet. If the third man had not been called away, and the scaffold had been moved in the usual manner, or if O'Neil and respondent had proceeded to move the scaffold in the customary way, instead of attempting to take it apart, the accident could not have happened.

A scaffold constructed and suspended in the manner stated was an instrumentality furnished by appellant. There was no evidence to show that, when properly handled, it was not a safe appliance for the purpose for which it was required.

Respondent was not an experienced structural iron worker, although he had worked with the roofing gang for a couple of days, and had assisted in moving the scaffold a number of times, had ample opportunity to notice its construction, the manner in which it was suspended, and the liability of its becoming detached or slipping from the iron pipes; yet his experience was not of such length of time, or character, as to put upon him the burden of anticipating that the boards might slip from their bearings if an attempt was made to move the scaffold by taking out the bolt in the manner stated. The position he was required to take in moving the scaffold was a difficult one, as he was obliged to stand on a pipe twenty-four feet from the ground and hold himself in place by resting one hand on one of the planks while attempting to remove the other plank. He was facing the upper end of the scaffold, with his back to the lower end, and by reason of his position and inability to watch that end he was not necessarily guilty of contributory negligence because in handling the board the lower end slipped off. It is evident that it required considerable skill and experience to detach and

move the scaffold by taking it apart. Respondent testified that he followed O'Neil's instructions, and resorted to this method of moving the scaffold simply because O'Neil took the initiative and he supposed it was all right.

For the purposes of this case we shall assume that O'Neil was a fellow servant, and that the duty of superintending the moving of the scaffold had not been delegated to him by the master; but this admission does not relieve appellant of the duty of furnishing a sufficient number of men to conduct the operations. Appellant was not excused from the duty of warning respondent of the danger of moving the scaffold by taking it apart. He received no instructions on the subject, and naturally followed the suggestions of the experienced workman. It does not conclusively appear from the evidence that respondent appreciated the dangers of attempting to move the scaffold in the manner stated, or that he assumed the risk of so doing. The evidence was sufficient to sustain the findings of the jury that the proximate cause of the accident was the calling away of the third man, and permitting the other two, without instructions, to attempt to accomplish the moving of the scaffold by taking it apart. Boyer v. Eastern Ry. Co. of Minn., 87 Minn. 367, 92 N. W. 326; Peterson v. American Grass Twine Co., 90 Minn. 343, 96 N. W. 913; Wickham v. Chicago, St. P., M. & O. Ry. Co., supra, page 74, 124 N. W. 639.

Affirmed.

O'BRIEN, J., took no part.